The next case today is Covidien LP et al. v. Brady Esch, appeal number 201515. Attorney Fleming, please introduce yourself on the record. Good morning, and may it please the court, Mark Fleming on behalf of Covidien. With the court's permission, I reserve four minutes for rebuttal. Yes, you may proceed. Thank you, Chief Judge Howard. This appeal focuses on count one of our complaint. Count one sought a declaratory judgment that the inventions recited in three patent applications filed by Mr. Esch were assigned to Covidien as a matter of law by operation of his employment agreement, and the evidence is unequivocal and overwhelming. Mr. Esch admitted several times over in contemporaneous documents and in his testimony on the stand at trial that his provisional application filed less than five months after he left Covidien contains an invention as the contract defines it, and that the other two applications contain the same invention. That invention was clearly subject to the assignment clause, and the district court should have so ruled, but the court didn't analyze the evidence because it incorrectly believed its hands were tied because of a jury verdict on a different count, count two. Now, Mr. Esch, in his brief to this court, notably does not even try to defend the district court's reasoning. Rather, he admits on pages 46 and 51 of his brief that the jury's verdict on count two at least could be consistent with a finding in Covidien's favor on count one that Mr. Esch did all that was needed to trigger the assignment clause, namely by conceiving an invention and taking affirmative steps to reduce it to practice within a year of leaving Covidien. So with no actual jury finding to foreclose it, the district court erred in not considering the evidence bearing on count one. We submit that requires at the very least a vacator and remand, but because the evidence is completely one-sided, we do think this is the unusual case where outright reversal is appropriate, and the court should direct entry of a declaratory judgment and end the litigation. Mr. Esch's device and the patent applications on it are clearly inventions as the employment agreement defines them. The definition of inventions is broad. It includes any improvement to existing articles of manufacture, whether or not patentable, and the combination of the five features from Project Catalea, which Mr. Esch worked on at Covidien and subsequently included in all three of his patent applications, clearly qualifies as an improvement, and you don't need to take our word for it. Mr. Esch himself repeatedly characterized his device as an invention, and he and his expert testified at trial that his device was an improvement. On December 8, 2013, before he'd even signed the separation agreement, Mr. Esch told an investor, ìI have a list of what I expect are patentable improvements.î A few months later, on March 26, 2014, he filed his provisional application, listing himself as the sole ìinventorî and titling the invention ìVenus Disease Treatment.î He swore in a declaration under oath that was read at trial, this is pages 11, 28, and 29 of the appendix, that he ìdid in fact conceive and design an inventionî in the provisional application. His expert also admitted that the use of a selectable length heating element did not exist to treat varicose veins before Mr. Esch's device. Mr. Esch admitted this too at trial, page 11, 36 of the appendix. The use of a reuse limiter was an improvement. Likewise, not used to treat varicose veins before Mr. Esch's device. The expert admitted that, Dr. Swanson, on pages 16, 42, and 16, 66. So it's clear we submit, and there isn't any meaningful argument on the other side, that Mr. Esch's device and the patent applications that resulted qualify as an invention under the contract. The contract therefore assigns the invention to Covidian as long as Mr. Esch took affirmative steps to reduce the invention to practice either while he was employed or within a year afterwards. And here, before we even get to affirmative steps, there is a constructive reduction to practice as a matter of law when he filed the 498 provisional patent application in March 2014. There was a jury instruction in this case that Mr. Esch himself proposed and that Judge Gorton gave to the jury that says that reduction to practice happens when an invention, quote, is fully described in a patent application filed within the United States Patent and Trademark Office. That's page 2251. And let's be clear, the 498 provisional application isn't something scribbled on a napkin. It has 12 pages of detailed illustrations, 24 pages single-spaced of detailed disclosure, and it contains the combination of the five features that Mr. Esch was working on at Covidian on Project Catalea. As for the 338 application and the PCT, which were filed later, they specifically incorporate the 498 provisional by reference and they claim priority back to it. That means they must contain the same invention. That's why they can claim the benefit of the earlier filing date. Beyond that, of course, and this is just added evidence, but it just reinforces the point, Mr. Esch also took primitive steps toward an actual reduction of practice, namely making an embodiment or a prototype of his invention. On February 2014, he signed a contract to develop an energy delivery console with pulse-width modulation of energy delivery, page 3101 of the appendix. In April 2014, he sent Mr. Christian of Phoenix DeVentures two emails indicating design inputs for a radiofrequency ablation device that covered all five of the features he was working on while at Covidian working on Project Catalea. He admitted that those design inputs that he sent in April 2014 were the same features as in Project Catalea. That's on page 1225. Each of those is clearly an affirmative step toward constructing an embodiment of a device that met all the limitations of the invention. And that, we submit, is all that this Court needs to decide in order to direct entry of a declaratory judgment in Covidian's favor, and we'd submit that it should. I'll say a word about the District Court's reasoning. It is a bit of a logic puzzle. I would submit I don't think the Court needs to get into it, given that even Mr. Esch isn't defending it on appeal. The point is the jury didn't make any findings whatsoever that are relevant to the declaratory judgment claim, count one. There were questions on the jury verdict form that would have had a bearing on count one. Those were questions six through eight, but the jury didn't answer them. The District Court, on its own motion and over our objection, told the jury not to answer those questions. And so the result is there's no jury finding whatsoever as to whether Mr. Esch took affirmative steps to reduce an invention of practice. Nothing prevented... Counselor, are you taking the position... I don't think I heard you take this position, but I want to be clear. Are you taking the position that the Court could not rely on any jury findings that it determined were made when it came to the equitable count, that it needed to start over again? Are you taking that position? In the context of this case, the answer is yes, Chief Judge Howard, because there is no jury finding that is germane to count one, the declaratory judgment. But if there had been, did the Court have discretion to rely on that jury finding? That's my question. Oh, I apologize. I misunderstood. Certainly, I mean, we don't quarrel with Beacon Theaters, right? I mean, that's obviously the law. If a jury makes a finding of a fact that is common to both a legal claim and an equitable claim, then obviously the Court is required to rely on that factual finding when deciding the equitable claim. Our point here simply is there is no such finding. There couldn't be such a finding. Now, in light of the state of the record. Now, just in abundance of caution, if the Court disagrees with me and thinks that the jury's verdict on count two for some reason did necessarily, and it has to be necessarily, did necessarily reflect a finding, that Mr. Esch didn't make an invention, then this is the alternative argument in our brief. We think such a finding is not supported by substantial evidence and would have to be reversed because the evidence is overwhelming that Mr. Esch did conceive of an invention and take affirmative steps to reduce it for practice. Let me follow up on what you were saying because when the jury deliberates and decides count two, the jury is weighing evidence, is making credibility determinations. You do read the transcript. Again, you argue that it would definitely favor a different verdict, but isn't this what juries do all the time? Again, you might ask questions, present evidence, but the jury can weigh those and that's the jury's prerogative. Wouldn't that be an issue that you also have? Shouldn't that jury verdict have to be respected also? So, Chief Judge, there's a couple of points there. The first is that would be the case if the jury had actually made a decision that bears on count one, the declaratory judgment claim. Those questions were questions six through eight. The jury didn't answer them. Because of the way the verdict form was structured, we objected to it. We asked that the jury be directed to answer those questions. We specifically asked, did Mr. Esch take affirmative steps to reduce an invention of practice? The district court refused to direct the jury to do that, so we don't have a jury finding as to that. The question with respect to the district judge's reasoning is, is there some kind of implicit finding based on the jury's verdict on count two that was necessarily made that therefore bound the district court to make a finding against us on count one? And the answer to that is clearly no. Because count two, the verdict on count two, does not turn on whether Mr. Esch took affirmative steps to reduce an invention to practice. It is quite possible that the jury could have concluded that while Mr. Esch did have an invention, nonetheless, he satisfied his obligation to disclose it. There are lots of ways the jury could have reached that outcome while finding that there was indeed an invention that was assigned by operation of the agreement. That's why questions six through eight were there, and we submit that they should have been answered at the time. They weren't. The result is there is no jury finding that bound the district judge with respect to count one. What you're arguing is that even if count two, count three, and all the other counts were to remain, the matter should be remanded as to count one either for a new trial or a new judge determination. Am I correct? Essentially, Chief Judge Helty, yes. No one is appealing counts three, four, and five. Those are final. Count two, we've only appealed as an alternative. We think the right answer here is at the very least a remand, not for a new trial. There isn't really a need for a new trial. The record has been made. All the evidence is in it. We think what should have happened is the district judge should have exercised his equitable authority to look at the evidence unfettered by any jury predict because, of course, there was no jury finding relevant to count one and make a decision as to whether the requirement of assignment was met in this case. We do think that, however, this is a case like this court's decision in Garcia-Rubiera v. Fortuna, which we cite, where the record is so clear that this court has the authority and should indeed direct entry of a declaratory judgment in our favor because there really is no plausible argument that Mr. Esch didn't have an invention and didn't take affirmative steps to reduce its practice. Therefore, rather than drag this out and require Judge Gorton to sit through this again, we think the right answer here is simply a reversal and directing the entry of declaratory judgment. With the court's permission, unless there are further questions... Counsel, it's still unclear to me how a no answer to question three, which is, has he proved that Mr. Esch breached his obligation to disclose, etc., and the answer is no, isn't implicit in that that the jury, within their prerogative, found that there was no invention? No, Your Honor, not in the least. And Mr. Esch, on page 56 and page 51, admits that that is not implicit because there's another way the jury could have answered that question, or could have reached that answer, which namely is he had an invention, but he disclosed it. And there are lots of ways that the jury could have found that. Obviously, we thought he had breached his duty, but the jury could have thought that, since he was the member of the eight-member court team working on Project Cataleya at Covidian, that when he came up with the supposed combination of five features as an employee of Covidian, he disclosed it to the other employees he was working with, and to the company. There was testimony of Mr. Esch himself, that he was at a conference where Covidian employees attended it, and the then-closed device with all five features was put up on a screen. The jury could also have believed that by publishing his utility application and making it known to the world, that Mr. Esch thereby also made it known to Covidian, because obviously Covidian is part of the world that would have been on notice of the published patent application. Also, even if we were to assume that the jury believed that Mr. Esch didn't make an invention while at Covidian, and thus had nothing to disclose during that time, that doesn't mean that he didn't take affirmative steps to reduce an invention practice within one year after leaving. And that's all that's needed to trigger the assignment clause under this contract. There are lots of ways the jury could have reached the verdict it did on count to, and said he didn't breach his duty to disclose, and Covidian wasn't damaged by a breach of a duty to disclose, but nonetheless there was an invention. Had the jury been directed to answer questions 6 through 8, we might have known if that's what the jury thought, but we don't know. And so we're in a situation where the jury could have gone either way. We have no reason to speculate that the jury found there were no inventions, and that left the district judge, and it leaves this court with a free hand to look at the evidence on this matter. Did Mr. Esch indeed take affirmative steps to reduce an invention of practice within a year of leaving? The evidence is manifestly, overwhelmingly clear that that's the case. So clear we'd submit that Judge Thompson, even if you disagree with my answer to your question, and you think the jury did conclude that there was no invention, that is not supported by substantial evidence, and that would have to be reversed. We don't think the court needs to go that way. We think our principal argument is amply sufficient unto the day. But if you disagree, then our alternative ground of reversing on count two is available as well. Thank you, Mr. Fleming. Thank you, Your Honor. All right, we will hear from Ms. Verrier. Good morning, Your Honors. May it please the court. The case here is that Mr. Fleming is trying to relitigate, re-weigh evidence in a very contested case that occurred over the course of three-plus years before Judge Gordon with motions for summary judgment, with numerous motions that occurred. And in no case, in no circumstance can it be said that the jury did not, was not presented with all of the evidence it needed in order to make its determinations. And a key point here, there are two main key points. Mr. Fleming wants to relitigate all of the facts, all of the issues, all of the evidence that Judge Gordon either allowed to be admitted or didn't allow to be admitted, and to question the credibility of the witnesses. The jury gets to decide that. Nine-day trial, they sat out for three days. And Covidien's special verdict form was the one that was adopted by Judge Gordon. It wasn't Appellee Zesch's special verdict form. It was Covidien's. And even after it was adopted, they came to the front. They said, we want to change it. This is the day it was to go to the jury. Judge Gordon thought about it and said, okay, I'll change it in your favor one more time. And then when they challenged it again, and it's in our brief, Your Honors, Covidien said, yes, this is fine. This is how we want it. This is the correct order. This is what's happening. And in part, that's because Covidien had two prongs to its case. It wanted damages of $9.5 million for the alleged confidential information. Instead, the jury – Just a point of clarification, Counsel. So you're saying that, contrary to what your brother just said, that the jury form that went to the jury was okayed, the final form was okayed by the appellant? Yes, Your Honor. In two instances in our brief, and I'll find the page if you need me to, Judge Gordon asks Covidien, Mounir Mejie and Patrick Arends, is this form okay? You approve this form. And then when they come back and argue about it later, and I was lead trial counsel, they said – Judge Gordon said, what are you complaining about? And the transcript is there. I gave you the form you wanted. This is the form you wanted. And to relitigate factual issues, as Mr. Fleming attempts to do, well, this guy said this, and Mr. Esch said this, and this expert said this. There's no basis to relitigate. The own case that they cite, the Porter case, says it's the judge's discretion with regard to equitable claims. So even though he could have gone contrary to the jury verdict, special jury verdict form, Judge Gordon decided it wasn't appropriate. The special verdict form set out clearly what the issues were and what they needed to find. He gave specific instructions as to what an invention, what constitutes an invention. And the jury found no, no duty, no duty, no duty. He didn't fail to disclose anything. And the bigger point here, Your Honors, is that it wasn't Mr. Esch's invention. It was third-party Venclose's invention. It was their non-provisional patent applications. They spent millions of dollars and more than four years developing the product. Mr. Esch did not own, they can't assign back a patent that is not owned by Mr. Esch. It hasn't been owned by Mr. Esch since 2014. And he is one of four inventors on the provisional patent application. Look, we all know that everybody can file a provisional application. I could have a flying bike. I could do whatever I want. You have a year. It stays hidden. It's quiet. You have all these ideas. You do it to use a place marker. Mr. Esch did do that. It was not sufficient. In fact, it was admitted at trial by the evidence that he could not have developed it by himself. So it wasn't reduced to practice. It wasn't anything. And it was assigned to Venclose, who spent the money, time, and other experts and had three other inventors necessary to reduce it to practice, have a better idea. It was different. There's no claims in a provisional application. They come in the non-provisional application. And Venclose owned it. And over and over and over, when Apelli Esch said, Venclose is a necessary party. I own no patents. I own no patent applications. You've got to bring in Venclose. Covidian objected to that. Judge Gorton agreed with Covidian that they were not an indispensable party. But he's not the owner of the patent. So, of course, Venclose was an indispensable party because they own the patent applications. And the court cannot give a patent or a patent application that does not belong to Brady Esch. It can't overrule three other inventors who were the key inventors. And as the evidence showed at trial, one in particular, Mr. Priscotta, he was the one that made this novel and different. And you can't erase inventorship. Brady Esch hasn't owned those patent applications or patents since 2014, when they were validly assigned to a corporation who Covidian refused to get into this case. And the reason, so there's a little bit of background, Your Honors. The reason is there was no jurisdiction over Venclose. And if they had sued in California, which would have been the only place where they could have sued Venclose, the court would have immediately ruled the post-termination assignment invention agreement as illegal under 17200, which is a California statute, a non-compete statute. They don't allow any form of non-competes, as I'm sure Your Honors know, and they don't allow post-termination assignment. Is this part of your argument in your briefs? It's been, it's in the, yes, it is in the brief as well, that they refused to allow Venclose and repeatedly told Judge Gorton that they were not an indispensable party. But more importantly, I think that the issue is that relitigating facts and weight of credibility and evidence, as Mr. Fleming attempts to do, is simply improper. Judge Gorton did everything he could to keep the case on track for over three and a half years. Ms. Berry, if I can ask you just this question. Of course. If the jury did not find that there was no invention, do you still win? Yes, of course. That's what they did find. They found? Well, we don't know what they found. They said, did he breach, the jury instruction says, did Mr. S breach his duty to disclose a particular invention to Kavitian within a year of his termination? And the jury found, no, he didn't. I'm going to ask my question again because I don't think I got an answer. I may have, but I'm a little confused. The question was, if the jury did not find that there was no invention, can you still win? Yes. Can you explain? Sure. Even if there was an invention, it was not Mr. Esch's invention. There were four inventors. The non-provisional application was owned and still, now the patent is owned by Venclose. It is not Mr. Esch's invention. Wouldn't this require, though, the district court, in considering the equitable count, to weigh those facts? I thought the district court's conclusion was that the jury found that there was no invention. And if the jury did not find that, don't we have to remand? Absolutely not. The facts were weighed in a way, and the monetary amount sought by Kavitian for the breach of confidentiality. That's why the $9.5 million number was put up. And as the Porter case says, which is cited to by Kavitian, it is not up to an appeals court to remand or re-weigh evidence or to decide that Kavitian wasn't already made whole. By whatever means, monetarily, by assignment, by whatever means there was, Your Honor. All right, so your position is that a finding on counts four and five that he breached a duty to disclose confidential information, that there was a breach of that, that doesn't necessarily mean that there was an invention. Absolutely, absolutely. It does not mean, and he doesn't own it. Again, there's patent law which supersedes the factual weighing of things that went on, and there were numerous motions for summary. But did issues of ownership come up at trial and get to the jury? Yes. Yes, and numerous people from Venclose and the other inventors testified and presented evidence, and those issues were all weighed by Judge Gorton. In a lengthy, lengthy, as I mentioned, three-and-a-half-year case. Was there a motion practice at all around the issue of indispensable parties? Yes, several. We raised it at least twice until Judge Gorton got a little bit upset with me for raising it for the second or third time and said no. Kavitian insisted this case can be resolved solely through Mr. Esch. We don't need Venclose, we don't need the other inventors. Repeatedly to the court, Your Honors. And now they're trying to switch the tact and say, oh, we get Venclose's invention that they spent three years developing and $10 million developing. I want to go back to the first question I asked you because your answer still was not clear to me, and the reason it's important is because it depends upon the standard of review that we would employ. Yes. In other words, if there was a valid objection to the jury form, then it's one standard. If there was no objection, we look at plain error. So that's why I'm trying to figure out, even if it was a last-minute objection, was there an objection before the case went to the jury? There was no objection, and in fact, I will cite to you the page, and I'm sorry I don't have it available right this exact second. But in our brief, it was brought to the attention of the court that – let me find it. I apologize. It is in our brief, but I was there, and it's in our brief. And what happened was the jury's – the special verdict form, both sides submitted special verdict forms. The court adopted essentially covidience. When it was going to the jury overnight, covidien came up with another objection to the special jury verdict form. It was adopted by the court. They asked Mr. Arendt and Mr. Meiji, do you agree? Is it okay now? They said yes, and it was submitted. And only after the jury didn't come back with the verdict they wanted, because they wanted the patents, did they object. It was their form, their revisions that were sent to the jury, and they were upset because it didn't go the way they wanted. Now they want to reweigh everything else and decide that they weren't made whole when in the Porter case, it is very clear that an equitable claim is determined by the judge. Was someone made whole? Were all the facts weighed? Was all the evidence weighed? And, of course, the answer was yes. Judge Gorton was very thorough, often ruled against me. They had their day in court, their nine days. Let me ask you. Assume that this count one would be remanded back to Judge Gorton. Would that be a jury trial, or would it be a matter that he could decide, again, if it were to be remanded? It would be an equitable matter, so I assume that there wouldn't be a jury, but by the same token, if the jury thought that Kavitian was made whole by its verdict and the judgment of almost $800,000, not $9.5 million, then the entire matter would have to be remanded because part of the damages is the alleged patent assignment. That doesn't work. You can't have your cake and eat it, too. You can't get a monetary verdict that supposedly made you whole, then argue against the special verdict form that you yourself wrote, and then go for a double dip. It makes no sense, and it's not equitable. Thank you. Is it your position that Judge Gorton didn't make a finding on count one, or that he made a finding which your brother is contesting? He made a finding. Judge Gorton, well, made the finding that the declaratory relief action shouldn't be a separate ruling because the jury had already made its determination that there was no breach of that provision of his employment agreement. So there's nothing for Judge Gorton to declare because there was no breach of that provision. So you can't get from step one to step three without going to step two, and step two, necessarily, is that there had to be a breach of the invention assignment provision. The jury said no. So if Judge Gorton changes his mind, he would be overruling the jury's verdict. Just to be clear, because they have an alternative argument, your position is that there was substantial evidence which supports the verdict. Yes. And could you just briefly describe what you're saying that substantial evidence is? The substantial evidence was that we had so many witnesses, so much went on. But aside from the indispensable parties' argument. Right. There was substantial evidence that Mr. Esch had a potential idea within the one-year post-termination assignment provision, but that it was not an invention. It was not concrete. It was not reduced to practice. It was nothing. It was assigned to Venclose as maybe, look, maybe I have something, maybe I don't. He's a prolific inventor. He has more than 30 patents under his belt. Venclose took the time, the money, and hired people expertise to take a maybe idea, which we all know a provisional application is a placeholder. That's all it is. I can file 20 tomorrow. They're not published. They disappear after 12 months if you don't come up with a working embodiment of your quote-unquote idea. I can file 20 tomorrow. It's only $250. They disappear. They're never disclosed to the public. They're just placeholders so that you can relate back when a non-provisional was filed. When Venclose filed the non-provisional, there were four inventors because nothing worked. It was a placeholder. It was an outline, a maybe, maybe not. And there were significant changes. And that's when the claims are made, which then the Patent Office reviews, and then it's decided whether or not it's even a patentable invention. All right. Thank you very much. Thank you. Mr. Fleming, I think you've reserved a little time. Thank you very much, Your Honor. I want to address this issue of our objection to the verdict form because I was astounded by what Ms. Verrier was saying. On page 2253 of the appendix, beginning on line 24, this is before the jury retires to deliberate. The court says anything from the plaintiffs. Plaintiff's counsel, Mr. Aaron, says yes, Your Honor, two quick items. And the second item, beginning on line 24, similarly questions six through eight should be answered regardless of any yes or no answers. And then subsequently, after the jury came back, on page 2289, there's a sidebar before the jury is discharged. Beginning on line four, Mr. Meggie, lead trial counsel, says, Your Honor, we would request that the jury answer questions six through eight. Further down the page, the duty to disclose and the affirmative steps to reduce inventions to practice arise under different paragraphs of the agreement. They need to answer whether or not Mr. Esch took affirmative steps to reduce his inventions to practice under the top of 2290. That was a matter of the objection to be filed. And I want to make sure our record is preserved before the jury ends deliberations. The court says, okay, your record is preserved. So could you just clarify for me the contingency language that shows up in the verdict? If you answer question three, yes, proceed, et cetera, was that not in your proposed jury instruction? Who put that language together? The court put that language together, Your Honor. We had filed a written objection the day before, and this is page 560 where we set out what we thought was the correct logical arrangement. And it had no precondition for the answering of questions six through eight. Those were going to be answered no matter what the judge did not accept that logical cascade of the verdict form. Instead put that if you answer, you only answer six through eight. If you answer question three, yes, that was something that the court came up with. We objected repeatedly. And most importantly, Judge Gordon found in his post-trial order that we had preserved our objection. That's on page seven of the addendum to our blue brief. He says, Covidian adequately voiced its objection and the motion is procedurally sound. So the idea that there was any kind of waiver of the objection to the verdict form is simply unsupportive. It is not true whatsoever. I would like to say something about the point that the notion that other people invented something in these applications, that is an argument that is made without any support in the red brief. There's no suggestion what it is that other people supposedly invented. The notion that the non-provisional application was something invented by anyone other than Mr. Esch is belied by the document itself. On page 2330, the sole inventor on the provisional application is Mr. Esch. This idea that the fact that there are other inventors listed on the later patent applications is somehow a problem. It's not. We're not trying to claim the rights of any other co-inventors. All we have ever sought is what we are entitled to under the contract, which is Mr. Esch's rights in the patent applications. If the declaratory judgment is entered as we submit, it should be the result of co-owning the patent applications and any resulting patents with the co-inventors and their assignee. We are not trying to dispossess Venclose of anything. We simply want Mr. Esch's rights. If the other co-inventors have assigned their rights to Venclose, Venclose continues to own those rights. It is a common feature of patent law that patents and applications can be co-owned. This notion, Chief Judge Howard, to your question, that the California law argument was somehow preserved, it is not. It's not in the red brief. Chief Judge, there's a footnote that mentions it, but it's certainly not developed. Judge Gordon rejected that argument, found that the agreements were governed by Massachusetts law. That's on page 450 of the appendix. That issue has not been appealed. It's certainly not breached. Similarly, the suggestion is very innate that there would have to be a remand of the damages verdict on counts four and five. There's been no cross appeal in this case. There's been no suggestion that those, that that damages verdict and judgment is anything other than final. So I'd submit that is a route the court should not go down. The final thing I would say, the court's permissions. We are not trying to re-litigate anything. We are seeking an answer on the merits to a claim that we brought the first claim in our complaint, our first count, that nobody has answered. No one has decided on the evidence, whether Mr. Esch took steps, affirmative steps that triggered the assigned clause under the contract. The jury was told not to answer it. Judge Gordon thought erroneously that he couldn't answer it. I think Ms. Verrier put it perfectly. She said, quote, we don't know what they found. Absolutely right. We don't know what the jury found with respect to affirmative steps to reduce invention of practice, because they didn't answer the only questions on the verdict form that would have given us any insight into that. The result, therefore, it's courts may and should decide the equitable claim based on the evidence because nobody has made a finding on it. We would respectfully submit unless the court has any questions that the court should reverse the judgment, direct entry of a declaratory judgment in convenience favor on count one, or at the very least remand for Judge Gordon to analyze the evidence that was performed. We don't think there's any need for trial in this context. Thank you. All right. We'll take this case under advisement. I thank the court for its attention. Thank you, counsel. That concludes argument in this case, attorney Fleming and attorney Verrier. You should disconnect from the hearing at this time.